**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Petitioner-Appellee,**

v.

**UNITED ASSOCIATION OF JOURNEY- MEN AND APPRENTICES OF the PLUMBING AND PIPEFITTING IN- DUSTRY OF the UNITED STATES AND CANADA, LOCAL UNION NO. 189, Respondent-Appellant,**

and

**Mechanical Contractors Association of Central Ohio, Inc., Respondent- Appellee.**

No. 20514.

United States Court of Appeals, Sixth Circuit.

Feb. 3, 1971.

Weick, Circuit Judge, concurred in part and dissented in part and filed opinion.

John J. Duffey, Columbus, Ohio, for appellant; Topper & Alloway, R. Brooke Alloway, N. Victor Goodman, Columbus, Ohio, on brief.

Russell Specter, Deputy Gen. Counsel, Washington, D. C., for appellee; Stanley P. Hebert, Gen. Counsel, Charles Reischel, Marian Halley, Attys., E.E.O.C., Washington, D. C., on brief.

Before PHILLIPS, Chief Judge, and WEICK and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal from a summary judgment entered by a District Judge in the United States District Court for the Southern District of Ohio, Eastern Division, on petition of the Equal Employment Opportunity Commission. The judgment requires respondent, Plumber's Union,[1] to renegotiate its collective bargaining agreement and substantially to alter its seniority groups by eliminating the current work experience requirements and the Journeymen's examination requirement. The District Judge found, as EEOC contended he must (from what EEOC claimed and the District Judge found to be undisputed facts), that the union agreement, although nondiscriminatory on its face, operated against a past background of exclusion of all Negroes from the plumbing trade so as to constitute present and future discrimination, in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1964).

Although the parties do not frame them that way, it appears to this court that at least three important issues are presented on this appeal. The first is whether this case, which was numbered and processed as an entirely new case in the District Court, should have been and should now be treated as the same case as a preceding and closely related case entitled Locke v. Local 189, et al., Civil No. 68–148 (S.D.Ohio 1968). In *Locke* by a "settlement agreement" the parties proposed and the court entered a final judgment upon which in the present appeal both EEOC and the District Judge relied.

The second issue is whether in either event plaintiff EEOC had standing to

---

1. United Association of Journeymen and Apprentices of the Plumbing and Pipe-fitting Industry of the United States and Canada, Local Union No. 189.

bring this suit under 42 U.S.C. § 2000e–5(i) which reads as follows:

"(i) In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under subsection (c) of this section, the Commission may commence proceedings to compel compliance with such order."

The third question is, no matter how the procedural questions stated above may be answered, did the District Judge have undisputed facts before him from which he could properly have entered the findings of fact upon which his summary judgment depends, including two (findings 11 and 12) which appellant now claims are in dispute and always have been.

Over and above these issues, appellant union contends the District Judge committed reversible error by admitting and considering certain depositions and refusing to admit and consider certain others.

The factual posture of this case is somewhat complex and is relevant to both the procedural and substantive questions involved here. We recite it from the opinion of the District Judge:

"This matter is before the Court on the motion of the petitioner, the Equal Employment Opportunity Commission (hereinafter 'Commission'), for a summary judgment under the provisions of Rule 56 of the Federal Rules of Civil Procedure. This motion is sought against the respondent, the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local Union No. 189 (hereinafter 'Union'), on the issue of whether the Union has violated the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000c–2 (hereinafter Title VII) with respect to the hiring hall and referral provisions of their collective ,bargaining agreement with the other named defendant, the Mechanical Contractors Associ-

ation of Central Ohio, Inc. (hereinafter 'Association').

\* \* \* \* \* \*

"The order which the Commission claims has been violated was issued by this Court on May 29, 1968, in the case of Locke v. Local Union No. 189, et al., Civil No. 68–148 (S.D.E.D.Ohio 1968). The *Locke* case was a private action under Title VII (42 U.S.C.A. § 2000e et seq.) to redress and enjoin unlawful employment practices, specifically discrimination on the basis of race, on the part of the named defendants.

"On May 29, 1968, on the basis of the Settlement Agreement entered into among the parties, the Court ordered in part that:

3. Articles XV and XVI of the [Collective Bargaining] Agreement [relating to hiring hall and referral procedures and seniority and lay-off provisions] between Local Union No. 189 and the Mechanical Contractors Association of Central Ohio, Inc., effective June 1, 1967, shall be renegotiated between the parties to the Collective Bargaining Agreement for the sole purpose of assuring compliance with Title VII of the Civil Rights Act of 1964, and submitted to the Court for approval.

"Subsequently, on September 30, 1968, a Memorandum of Approval was submitted to the Court, and then signed by this district judge, which stated in part:

Upon consideration thereof, the Court approves such renegotiated Articles XV and XVI, a copy of which is attached to this Memorandum and made a part hereof, as *appearing* to be in compliance with Title VII of the Civil Rights Act of 1964. [Emphasis added.]

"The renegotiated Articles XV and XVI are attached to this Opinion and Order as Appendix A.

"The Commission contends in the present proceeding that these renegotiated provisions of the Collective Bargaining

Agreement are not, in fact, in compliance with Title VII and that the Union should be required to alter certain provisions of these articles to comply fully with the May 29, 1968 Order in the *Locke* case.

"The respondent correctly points out that the remedy of summary judgment is only appropriate when there is no dispute as to material facts related to the issue presented by the motion. It is also true that when there are inferences sought to be drawn from undisputed facts, they are to be viewed in a light most favorable to the party against whom the summary judgment is sought. Williamson v. Wilbur-Rogers, Inc., 381 F.2d 719 (6th Cir. 1967).

"The Union has asserted repeatedly that it does dispute some of the facts upon which the Commission must rely in order to set forth a meritorious motion for summary judgment. However, nowhere in the record of this case does it appear that the following facts are genuinely disputed, and the Court finds that they are not, in fact, nor could they reasonably be, disputed.

"1. The provisions of the present collective bargaining agreement establish a system of priorities of available work, priority being given to the persons in Group I.

"2. The Union's present referral list contains about 1100 names.

"3. There are 800 journeymen in Group I, all of whom are white.

"4. There is not one Negro journeyman working within the Union's jurisdiction eligible for placement in Group I.

"5. There are no Negro journeymen who will become eligible for assignment to Group I in the foreseeable future.

"6. There are no Negroes [with the possible exception of Frank Williams] assigned to Group II to which about 300 white journeymen are assigned.

"7. Prior to September, 1968, the Union had never referred a Negro.

"8. The Union only recently admitted its first Negro apprentices.

"9. The Union has never had a Negro member [with the possible exception of Frank Williams].

"10. There are at least nine Negroes within the jurisdiction of the Union who possess City of Columbus plumbing licenses.

"11. There are presently and there have been Negroes within the Union's jurisdiction who can perform plumber's work.

"12. There are presently Negroes in the Union's jurisdiction who are capable of safely and efficiently performing journeyman work, but who do not meet the requirements set forth in the collective bargaining agreement for placement in Groups I or II.

"13. The 1960 Census of Population of the three counties (Franklin, Delaware and Pickaway) which comprise the metropolitan Columbus, Ohio area showed a total population of 754,885 persons. Of this total, the Census listed 81,917 as being members of the Negro race.

"With these facts before the Court as undisputed, the essential question presented for judicial determination at this time is whether or not these facts are sufficient to support a summary judgment in the petitioner's favor. Stated otherwise, do the undisputed facts justify a finding by this Court that the hiring hall and referral provisions of the collective bargaining agreement operate in a discriminatory manner and thus are in violation of Title VII of the Act?" (Footnote omitted.)

The District Judge answered his own last question in the affirmative. He entered an order granting relief as requested by the EEOC requiring respondent union to renegotiate its contract with the

Contractors' Association so as to eliminate from Articles XV and XVI thereof the requirement that persons in the class represented by the original plaintiff Locke must have five years work experience in the trade under the collective bargaining agreement and pass a journeymen's examination before being placed in the preferred referral classes for employment.

The fundamental thrust of appellant's argument is procedural. The union claims that Congress denied EEOC power to initiate actions to enforce the Civil Rights Act of 1964; that EEOC's filing of this action was ultra vires; and that the District Judge should have dismissed the complaint and that we must now do so.

■ We agree with appellant in part. We have no doubt that Congress did intend to withhold from EEOC the power to bring a complaint of violation of the Civil Rights Act. The history of the legislative compromise shows that the initiation of complaints under the Act was reserved to the United States Attorney General and to private litigants. *See generally* U.S. Equal Employment Opportunity Comm'n, Legislative History of Titles VII and XI of the Civil Rights Act of 1964, 3023 et seq. (comparative analysis of the Senate and House Bills, prepared by Sen. Dirksen), 3003–05 (comments of Sen. Humphrey), 3066–67 (analysis of Floor Leader Sen. Clark) (1964). The same conclusion may be drawn from a reading of the relevant portions of the Act, 42 U.S.C. §§ 2000e–4(f) (6), –5(a) et seq. (1964). *See also* Vass, Title VII: Legislative History, 7 B.C.Ind. & Com.L.Rev. 431 (1966).

But the Act by providing for private civil actions (*see* 42 U.S.C. § 2000e–5(e)) also allows the initiation of such suits as class actions under Rule 23 of the Federal Rules of Civil Procedure when, as here, the conditions set forth in the rule are met. Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969);

Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968).

The Act also provided for EEOC to have an important enforcement role. When an organization failed to comply with an order of a court, the Act provides that EEOC can "commence proceedings to compel compliance with such order." 42 U.S.C. § 2000e–5(i) (1964).

This then requires us preliminarily to determine whether the instant action is a new complaint or "a proceeding to compel compliance" with a previously existing court order.

Examination of the District Court files in Gwylard Locke v. Local 189, et al., Civil No. 68–148 (S.D.Ohio 1968), and EEOC v. United Ass'n of Journeymen & Apprentices of Plumbing, etc., Local 189 et al., 311 F.Supp. 468 (S.D.Ohio 1970), convinces us that beyond question this is a "proceeding" in the *Locke* case "to compel compliance" with the order of the District Court entered in *Locke*.

The original *Locke* complaint was a class action. Paragraph 6 of the complaint recited:

"Plaintiff brings this action on his own behalf and on behalf of other Negroes in Central Ohio, who desire employment within the work jurisdiction of defendant, Local Union No. 189, but who are prevented from working in the building trades industry by the unlawful acts of defendants herein set forth. There are common questions of law and fact affecting the rights of Negroes in the aforesaid group and class who are and have been limited, classified, and discriminated against in ways which deprived and tend to deprive them of employment opportunities and otherwise affect their status as employees because of their race and color. These persons are so numerous as to make it impracticable to bring them all before this Court. However, a common relief is sought and this plaintiff is an adequate representative of the said class."

The settlement of the *Locke* case was a class action settlement:

"SETTLEMENT AGREEMENT TO FORM BASIS OF COURT ORDER

"In order to settle the within dispute, the parties, through their counsel, agree as follows:

"1. All parties do hereby agree to be bound to an order in which this agreement shall be incorporated upon its acceptance by the Court.

"2. The Union, through its agents, will not maintain any policy, practice, custom or usage, including striking, work stoppage or work slowdown, to deny, abridge, withhold, condition, direct or otherwise interfere with the right of Gwylard W. Locke in particular, and Negroes in general, to equal employment opportunity, as that term is used in Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, et seq., and agree to take affirmative action forthwith to assure Gwylard W. Locke equal employment opportunity.

"3. Articles XV and XVI of the Agreement between Local Union No. 189 and Mechanical Contractors Association of Central Ohio, Inc., effective June 1, 1967, shall be re-negotiated between the parties to the Collective Bargaining Agreement for the sole purpose of assuring compliance with Title VII of the Civil Rights Act of 1964, and submitted to the Court for approval.

"4. Local Union No. 189 shall forthwith pay Gwylard W. Locke $10,000, which shall represent payment in full of back pay and attorney fees and any other monetary claims asserted in the Amended Complaint.

"5. The Court shall retain continuing jurisdiction to enforce its Order."

The District Court order ran to the benefit not of Locke alone, but to the benefit also of the class:

"1. Plaintiff, and the class whom he represents, is hereby granted a permanent injunction enjoining defendant, Local Union No. 189, its agents, successors, trustees, officers, employees, attorneys, and those acting in concert with them and at their direction or request from continuing or maintaining any policy, practice, custom or usage, including strikes, work stoppages or work slowdowns, of denying, abridging, withholding, conditioning, directing, or otherwise interfering with the right of plaintiff and others similarly situated to enjoy equal employment opportunity as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e.

\*      \*      \*      \*      \*      \*

"3. Articles XV and XVI of the Agreement between Local Union No. 189 and the Mechanical Contractors Association of Central Ohio, Inc., effective June 1, 1967, shall be re-negotiated between the parties to the Collective Bargaining Agreement for the sole purpose of assuring compliance with Title VII of the Civil Rights Act of 1964, and submitted to the Court for approval.

\*      \*      \*      \*      \*      \*

"The Court shall retain continuing jurisdiction to enforce this Order."

The EEOC petition was filed "to compel compliance" with the *Locke* order:

"The Equal Employment Opportunity Commission (hereinafter the 'Commission'), pursuant to Section 706(i) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(i), respectfully petitions this Court to issue an Order holding Respondents in contempt of the Order of this Court dated May 29, 1968, and to amend its Memorandum of Approval of September 30, 1968, entered in the case of Gwylard W. Locke v. United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States, Local 189, et al., Civil Action No. 68–148; and to substitute therefor an Order requiring the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States

and Canada, Local No. 189 [hereinafter 'Local 189') and the Mechanical Contractors Association of Central Ohio (hereinafter 'MCACO') to take certain specific steps to comply with Title VII."

■■■ This court is not bound by the way the Clerk of the District Court chose to docket, style or file this action. We look through form to substance. Disposition of the merits of the case is not precluded by a procedural mistake in the office of the Clerk of the District Court. As heretofore pointed out, the authority of EEOC is limited by the statute, 42 U.S.C. § 2000e–5(i). However, the Congress, by express language, has conferred on EEOC the power to institute proceedings to compel obedience with judicial orders. We hold that the action in the present case was initiated in the exercise of this power. We regard this case as a compliance proceeding in the *Locke* case and we so treat it for the purposes of this appeal.

■■■ This brings us to the closely related question as to whether, as claimed by appellant, there had been complete and final compliance with the court order in *Locke* so as to foreclose any further proceedings in that case. We do not think the record supports this contention.

It is clear to us that the purpose of the judgment entered in the *Locke* case was to bring relief not only to Locke, but also to a class of persons similarly situated who had likewise previously been discriminated against in employment terms in violation of Title VII of the Civil Rights Act of 1964. Very properly the court expressly reserved jurisdiction to enforce its order. *See* United States v. International Brotherhood of Electrical Workers, Local 38, 428 F.2d 144 (6th Cir. 1970).

The order of the District Judge subsequent to renegotiation of Articles XV and XVI did not terminate court jurisdiction over enforcement proceedings and the term *"as appearing to be in compliance with the terms of Title VII"* we read as only tentative approval of appellant's compliance actions.

■■■ We have no doubt that 42 U.S.C. § 2000e–5(i) conveyed ample authority to EEOC to call to the attention of the court any deficiencies in the effectiveness of the compliance proceedings. And beyond question, the District Court had authority either sua sponte or on petition to reshape its injunction so as to achieve its original and wholly appropriate purpose. United States v. United Shoe Machinery Corp., 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968); King-Seeley Thermos Co. v. Aladdin Industries, Inc., 418 F.2d 31 (2d Cir. 1969).

We now hold that this is an appropriate proceeding "to compel compliance" with the District Court order in the *Locke* case (42 U.S.C. § 2000e–5(i)) and that the District Court had both jurisdiction and power to enter the supplementary order here appealed from.

This, then, brings us to the union's claim that in any event these proceedings were inappropriate for summary judgment because of disputes of material fact which required testimonial hearing before appropriate relief measures could be determined.

As we have noted, appellant's claims in this regard relate only to the two following findings of fact of the District Judge:

"11. There are presently and there have been Negroes within the Union's jurisdiction who can perform plumber's work.

"12. There are presently Negroes in the Union's jurisdiction who are capable of safely and efficiently performing journeyman work, but who do not meet the requirements set forth in the collective bargaining agreement for placement in Groups I or II."

■■■ The majority of our panel feels that there were disputed facts and inferences which had to be resolved before these two findings could be entered. In such a situation summary judgment is inappropriate. S. J. Groves & Sons Co.

v. Ohio Turnpike Comm'n, 315 F.2d 235 (6th Cir.), cert. denied, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963).

Since on remand a testimonial hearing will be required we find no need to answer the appellate questions concerning the District Judge's exclusion of certain statements and consideration of others during the summary judgment proceeding.

The judgment of the District Court is vacated and the case is remanded for hearing in accordance with this opinion.

WEICK, Circuit Judge (concurring in part and dissenting in part).

I agree that the District Court erred in granting summary judgment. Material facts, as well as the inferences to be drawn therefrom, were in dispute. In such a situation the granting of summary judgment was unauthorized. Rule 56 Fed.R.Civ.P.; S. J. Groves & Sons Co. v. Ohio Turnpike Comm'n, 315 F.2d 235 (6th Cir. 1963), cert. denied, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963).

Title VII of the Civil Rights Act of 1964 withheld power from EEOC to institute action to compel compliance with the Act or even to intervene in an action brought by an aggrieved party. The only power to institute such an action or to intervene in an action by an aggrieved party was vested by Congress in the Attorney General. 42 U.S.C. § 2000e–6(a); 42 U.S.C. § 2000e–4(f).

EEOC was authorized only to institute proceedings to compel compliance *with judicial orders.* 42 U.S.C. § 2000e–5(i) provides:

"In any case in which an employer, employment agency, or labor organization fails to comply with an order issued in a civil action brought under subsection (e) of this section, the Commission may commence proceedings to compel compliance with such order."

The legislative history of Title VII reveals that as originally passed by the House of Representatives, the bill not only authorized but obligated EEOC to institute actions to enforce the Act. These enforcement provisions were stricken by compromises worked out in the Senate by Senators Mansfield, Dirksen and Humphrey which effected a "transfer of litigating responsibilities from the Commission to the Attorney General." Legislative History of Titles VII and XI of Civil Rights Act of 1964, U. S. Equal Employment Opportunity Commission, pp. 2057, 3005. H.R. 7152 § 707.

In Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1005 (5th Cir. 1969), the Court said:

"Unlike so many Governmental structures in administrative law, EEOC is an administrative agency without power of enforcement. While it can subpoena witnesses, hold hearings, and attempt conciliation, it has no authority to issue orders or compel enforcement."

In American Newspaper Publishers Ass'n v. Alexander, 294 F.Supp. 1100 (D. D.C.1968), it was held that EEOC does not have enforcement powers.

It is not the function of the Courts to supply to administrative agencies powers denied to them by Congress, which created such agencies.

There were essentially two parts to the petition to show cause filed by EEOC and docketed as an independent action in the District Court. The first part cited the union for contempt for violating the consent judgment entered on May 29, 1968 in the *Locke* case which enjoined the union from "interfering with the right of the plaintiff and others similarly situated to enjoy equal employment opportunity as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e." The second part of the petition asked the Court to "amend" its order of September 30, 1968 in the *Locke* case, which had approved new Articles XV and XVI of the Collective Bargaining Agreement, articles which the union had renegotiated with the Contractors' Association in compliance with the judgment entered on May 29, 1968. The pe-

tition asked the Court to substitute a new order requiring the union "to take certain specific steps to comply with Title VII."

Only the first part of the petition, citing the union for contempt, related to enforcement of the Court's order. The second part was an attack on the Court's order of September 30, 1968 approving the two renegotiated clauses in the Collective Bargaining Agreement. An attack on the Court's order of September 30, 1968, eight months after it had been entered and while the parties had been operating under it, could hardly be construed as a proceeding to enforce compliance with an order. It was in reality a new action to compel compliance, not with an order of the Court, but with the Civil Rights Act, in which EEOC attempted to exercise powers granted only to the Attorney General.

Insofar as the contempt citation was concerned, EEOC apparently abandoned it. The District Court did not even consider it. No reference to the contempt charge is made in the Court's opinion.

There was a good reason for abandonment of the contempt charge in the District Court, namely because it was groundless. The union was cited for violation of an injunction restraining it from interfering with the right of the plaintiff and others similarly situated to enjoy equal employment opportunity as secured by Title VII of the Civil Rights Act of 1964.

That no one can be held in contempt of court for violating the provisions of a statute, was held by the Supreme Court in New York, N. H. & H. R. R. v. ICC, 200 U.S. 361, 404, 26 S.Ct. 272, 50 L.Ed. 515 (1906). Furthermore, the injunction lacked specificity and therefore did not comply with Rule 65(d) of the Federal Rules of Civil Procedure. The injunction was therefore void.

The order of September 30, 1968 was a final order from which no appeal was taken. It approved the two renegotiated clauses of the Collective Bargaining Agreement as being in apparent compliance with the Civil Rights Act of 1964. The statement therein that the clauses were in apparent compliance with the Act did not negate the fact that the clauses were nevertheless approved by the Court. The union and the Manufacturers' Association have been operating under them ever since September 30, 1968. EEOC apparently did not discover that the clauses did not comply with the Act until about eight months later. Instead of reporting the matter to the Attorney General for appropriate action, it undertook to take action itself.

The union had complied with the order of May 29, 1968 by negotiating a new collective bargaining agreement. That agreement was approved by the order of September 30, 1968. The reservation of jurisdiction by the Court in the order of May 29, 1968, was only for the purpose of *enforcing* that order. It did not need enforcement because the union complied with it by entering into the new agreement.

The majority treats the petition of EEOC for an order to show cause as a compliance proceeding in the *Locke* case. The trouble with this treatment is that EEOC in said petition sought, not to enforce, but to amend and modify the order entered in the *Locke* case which approved the renegotiated agreement, and to substitute in the place thereof a new order. If such petition is treated as having been filed in the *Locke* case, which it was not, then such filing would at least constitute an intervention in that case. In my opinion EEOC had neither the authority to file an independent action to enforce compliance with the Act, nor authority to intervene in the *Locke* case. The power to file an independent action to enforce compliance with the Act or to intervene in an action instituted by an aggrieved party was vested by Congress solely in the Attorney General. 42 U.S. C. § 2000e–6(a); 42 U.S.C. § 2000e–4(f).

EEOC claimed that the renegotiated collective bargaining agreement approved by the Court, "although nondiscrim-

inatory on its face," and perfectly legal if there had been no past discrimination, did not go far enough to eradicate the effects of the past discriminatory practices. It was not contended, however, that the District Judge, in approving the agreement, acted without knowledge of material facts, or that he made a mistake, or that the parties imposed on him.

In its summary judgment the Court abolished the longstanding seniority and hiring hall provisions of the collective bargaining agreement. These abolished provisions provided for training of apprentice plumbers for five years, and for a test before an apprentice could become a journeyman plumber. The summary judgment required only one year's experience and a license from the City of Columbus to become a journeyman. This operated to discriminate against the many union members who had been required over the years to obtain five years' apprentice experience and to pass a test before becoming journeymen.

It would seem that if there had been previous discrimination in the admittance of Negroes to the union, in the administration of the apprenticeship program, testing, or in the hiring hall procedures, all of which was denied, appropriate orders could have been addressed to these discriminatory practices without entirely abolishing the system and discriminating against other members of the union who have complied with the program. There was substantial evidence that such training and testing was necessary to obtain qualified plumbers, particularly in the field of commercial or industrial buildings. In my opinion the order abolishing the seniority provisions, apprenticeship, testing and hiring hall procedures was punitive in nature rather than remedial. It ought not to have been entered.

I would remand with instructions to dismiss the petition filed by EEOC and leave the redress of any alleged wrong to appropriate action by the Attorney General.