AIR LINES STEWARDS AND STEW-
ARDESSES ASSOCIATION, LOCAL
550, et al., Plaintiffs-Appellees, and
Equal Employment Opportunity Com-
mission, Applicant for Intervention-Ap-
pellant,

v.

AMERICAN AIRLINES, INC., and Trans
World Airlines, Inc., Defendants-
Appellees.

Nos. 71–1614, 71–1615.

United States Court of Appeals.

Seventh Circuit.

Jan. 18, 1972.

Lutz A. Prager, John de J. Pember-
ton, Jr., Acting Gen. Counsel, Julia P.

Cooper, Chief, Appellate Section, Equal Employment Opportunity Commission, Washington, D. C., for appellant.

Laurence A. Carton, Joseph P. Carr, Gardner, Carton, Douglas, Chilgren & Waud, Chicago, Ill., for defendants-appellees.

Gilbert Feldman, Barbara J. Hillman, Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS, PELL, and STEVENS*, Circuit Judges.

CUMMINGS, Circuit Judge.

In these two class actions, the Union [1] and certain former stewardesses asserted that both defendant airlines had violated Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) by terminating stewardesses who had become pregnant. They sought reinstatement, back pay, and other relief. On June 1, 1970, the Union filed appropriate charges with the Equal Employment Opportunity Commission, and a month thereafter the Commission notified the Union that it was entitled to initiate civil actions in the district court in accordance with 42 U.S.C. § 2000e–5(e) and (f). These suits were filed a fortnight thereafter.

Although the district court initially refused to permit the Commission to participate as amicus curiae, in March 1971 it was granted leave to file an amicus brief in support of plaintiffs' motion for summary judgment and did so on April 30, 1971.

After our decision in Sprogis v. United Airlines, 444 F.2d 1194 (7th Cir. 1971), certiorari denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 the parties entered into settlement negotiations resulting in July 14, 1971, memoranda of understanding. The two airlines agreed to place pregnancy-discharged stewardesses on a hiring list according to their seniority at the time of discharge (plus 90 days in the American Airlines case). Upon the occurrence of a vacancy, a stewardess would have ten days to accept reemployment on condition that she meet weight restrictions and other qualifications in effect at the time of her discharge. As the Commission notes, the proposed settlement did not entitle the stewardesses to immediate, unconditional reinstatement, full seniority from time of first hire, and back pay from date of discharge.

At a hearing on July 16, 1971, the district court entered orders permitting the suits to proceed as class actions, and permitting notice of the proposed settlement and an August 30, 1971, hearing thereon to be given to the stewardesses' class by publication in the union newspaper. A copy of the notice was also mailed to each stewardess at her last known address. On August 18 and 19, 1971, the airlines mailed copies of the proposed settlement to members of the class.

On August 5, 1971, the Commission sought to intervene as of right in both suits under Rule 24(a) of the Federal Rules of Civil Procedure. However, the motions to intervene were denied on August 11, 1971, on the ground that

"These parties have always been fairly represented, they have been represented by competent counsel."

Thereupon the Commission appealed, and on August 25, we granted a stay pending resolution of the consolidated appeals.

■ Rule 24(a) of the Federal Rules of Civil Procedure governs intervention of right. Clause 1 of that Rule permits intervention when a statute of the United States confers an unconditional right to intervene. No such statute has yet been enacted as to the Commission [2].

---

*On the day following the oral argument, a fact which Judge Stevens deemed disqualifying came to his attention; he did not thereafter participate in this case.

1. Airlines Stewards and Stewardesses Association, Local 550.

2. Upon his certification that the case is of general importance, the Attorney Gen-

Significantly, 3B Moore's Federal Practice ¶ 24.06[2] p. 24–94 (2d ed. 1969), notes that Congress has allowed the United States to intervene in various types of proceedings under the Civil Rights Act of 1964, but nothing is said about Commission intervention.

Clause 2 of Rule 24(a) also permits intervention of right "[1] when the applicant claims an interest relating to the property or transaction which is the subject of the action and [2] he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, [3] unless the applicant's interest is adequately represented by the interested parties." These three conditions have not been met.[3]

I. The Commission's Interest in the Subject Matter of the Action and Practical Impairment of its Interests.

In an attempt to satisfy the first condition, the Commission asserts that its interest in these cases is predicated on Section 706(i) of the Act, which provides:

"In any case in which an employer, employment agency, or labor organiza-

tion fails to comply with an order of a court issued in a civil action brought under subsection (e) of this section, the Commission may commence proceedings to compel compliance with such order." (42 U.S.C. § 2000e–5(i)).

Under this Section the Commission claims an interest both as the government agency empowered by Congress to enforce court orders and as the representative of the class on whose behalf these suits were brought. The Commission characterizes its interest as that of monitoring remedies in private Title VII cases to make certain that they vindicate the policies of the Act and afford appropriate relief. If this were the actual nature of the Commission's interest, it might be sufficiently related to a judicial proceeding approving a consent decree to justify intervention. However, the Commission's self-characterization is overstated.

Clearly Section 706(i) empowers the Commission to initiate court proceedings to compel compliance only when (1) a court order, coercive or consensual, has issued and (2) the subject of that order has failed to obey it.[4] This provision does not, as the Commission contends,

eral is permitted to intervene as of right when a district court action has been commenced seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment on account of race, color, religion, or national origin. Section 902 (42 U.S.C. § 2000h–2).

3. Appearing to recognize that the entire thrust of Title VII's procedural scheme militates against allowing the Commission any right to control the course of Title VII litigation, the Commission makes alternative arguments for "authority" to intervene where it meets the requirements of Rule 24(a) (2). On the basis of such cases as Securities and Exchange Comm. v. United States Realty & Improvement Co., 310 U.S. 434, 458–459, 60 S.Ct. 1044, 84 L.Ed. 1293; United States v. American Trucking Ass'ns, 310 U.S. 534, 541, 60 S.Ct. 1059, 84 L.Ed. 1345; All American Airways v. Village of Cedarhurst, 201 F.2d 273, 274–275 (2d Cir. 1952); West India Fruit & Steamship Co. v. Seatrain Lines, Inc., 170 F.2d 775 (2d Cir. 1948); and Teamsters Union, Local 542 v. Ace Enterprises, Inc., 332 F.Supp. 33, 38 (N.D.Cal.

1971), the Commission argues that as a federal agency it has inherent authority to intervene which can only be negated by an express statutory provision to the contrary. Alternatively the Commission relies for its authority to intervene on 42 U.S.C. § 2000h–3, which provides:

"Nothing in this Act shall be construed to deny, impair, or otherwise affect any right or authority of the Attorney General or of the United States or any agency or officer thereof under existing law to institute or intervene in any action or proceeding."

However, we do not resolve this controversy in terms of "authority" to intervene, for the Commission has not satisfied the conditions for intervention in Rule 24(a) (2). But see Braddy v. Southern Bell Telephone & Telegraph Co., No. 71–2172 (5th Cir., decided January 11, 1972), where the Commission was found devoid of such authority.

4. See Note, Developments in the Law: Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv. L.Rev. 1109, 1236, 1248–1249 (1971).

charge it with responsibility in fashioning relief as opposed to determining the existence of a violation, and it does not "authorize[d] its participation in *all* suits brought by private individuals upon the entry of judgment in their favor." (Emphasis in Commission's main brief.)

■ When Congress provided for the intrusion of the Commission in Section 706(i), it did not make a dichotomy between establishing the underlying offense, from which the Commission was deliberately excluded,[5] and fashioning complainants' remedies. Here the Commission asserts that the proposed settlement violates the Act and that it affords narrower relief than would be awarded upon successful litigation.[6] This is simply the Commission's subjective assertion that conduct that will be permitted to the defendants is conduct violative of Title VII. Plainly the Commission cannot bring suit to establish that contention.[7] Since relief is always tailored to remedy the conduct found offensive, dissatisfaction with the court's appraisal of the conduct can always be articulated in terms of inadequacy of the relief afforded. Consequently, without subverting the manifest intent of Congress that only private litigants and the Attorney General may sue to establish an unfair employment practice,[8] we cannot accept the notion that Congress meant to invest in this Commission a participating interest in formulating Title VII remedies. Braddy v. Southern Bell Telephone & Telegraph Co., No. 71–2172 (5th Cir., decided January 11, 1972). Indeed, Section 706(i) embodies the judgment that Commission action against non-compliance with court orders will promote more scrupulous obedience, ensure against intimidation of successful plaintiffs' attempts to enforce court orders, and relieve private plaintiffs of the burden of a second action to secure the relief to which a first action found them entitled.

■ Section 706(i) does not authorize Commission participation in all suits as soon as judgment is rendered for plaintiffs. Simply stated, the interest afforded under Section 706(i) is the limited one of the ability to initiate contempt proceedings upon the defendant's failure to comply with the order of the trial court.[9] Failure to comply with the court's decree is the condition for Commission action under Section 706(i). Contumacious behavior is not something that can readily be assumed. Therefore, the Commission's legitimate interest under Section 706(i) is contingent and not direct, as required by Rule 24(a)(2). See Hobson v. Hansen, 41 F.R.D. 18, 24 (D.D.C.1968); 3B Moore's Federal Practice ¶ 24.09–1 [2] at 24–301 (2d ed. 1969).

5. The Senate stripped the Commission of authority to bring suit in its own right after the House Committee on the Judiciary had divested it of its coercive enforcement powers. See Miller v. International Paper Co., 408 F.2d 283, 286 (5th Cir. 1969); Vass, Title VII: Legislative History, 7 B.C.Ind. & Com.L.Rev. 431, 450–452 (1966); Note, *supra* note 4, at 1196–1197 n. 8. An authority on the legislative history of Title VII has stated that when the Mansfield-Dirksen amendment stripped the Commission of its ability, to initiate suit, the Commission was given power to recommend matters it felt deserved government action or intervention to the Attorney General and to advise and assist the Attorney General on such matters (42 U.S.C. § 2000e–

4(f) (6)) as the *quid pro quo* to satisfy Congressional advocates of a "strong" EEOC with enforcement powers. Vass, *supra*, at 451–452.

6. The Commission also complains that the settlement notice given to the members of the class was inadequate. See text *infra*.

7. See 42 U.S.C. §§ 2000e–4(f), 2000e–5.

8. See 42 U.S.C. §§ 2000e–5(e), 2000e–6 (a); Note *supra* note 4 at 1196–1197, 1228.

9. See Note *supra* note 4 at 1236, 1249; see also Equal Employment Opportunity Commission v. United Ass'n of J. & A. of Plumbing, Etc., 438 F.2d 408, 414 (6th Cir. 1971).

■ What limited interest the Commission has under Section 706(i) is not practically impaired within Rule 24(a)(2) by denying it rightful intervention. The Commission argues that without intervention it will find itself on the horns of a dilemma: it will be forced to choose between refusing to enforce a defective court order and enforcing an order which does not carry out the policies of the Act. However, we perceive no such dilemma. By the express terms of the statute the Commission simply cannot seek to enforce an order, defective or otherwise, unless it is disobeyed. The Commission's interest is in ensuring *compliance* with court orders, and that interest is not impaired by disallowing intervention in court proceedings to determine liability or award relief.

■ In its reply brief the Commission argues that an interest sufficient for intervention under Rule 24(a)(2) also emanates from Section 706(a) of the Act (42 U.S.C. § 2000e–5(a)) which requires the Commission upon a finding of reasonable cause to believe the Act is being violated, to "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." The Commission further contends its interest in effective conciliation will be impaired by the *"stare decisis"* effect of a defective court order. First, the Commission does not have sufficient interest in the success of the conciliation negotiations in its own right to justify intervention. The real party in interest in conciliation endeavors is the employee alleged to

have been discriminatorily treated. He is completely free to accept or reject the proposals of union or employer as well as the position taken by the Commission.[10] Second, even if we were to assume the Commission itself had a cognizable interest, the effect of what the Commission believes to be an erroneous court order cannot be said to impair significantly its negotiating position. While under the 1966 amendment of Rule 24 *"stare decisis* principles *may in some cases* supply the practical disadvantage that warrants intervention as of right"* (Nuesse v. Camp, 128 U.S.App. D.C. 172, 385 F.2d 694, 702 (D.C. Cir. 1967) (emphasis added); see Atlantis Development Corp. v. United States, 379 F.2d 819, 828–829 (5th Cir. 1967)), the possible effect of a consent decree on the Commission's future negotiating position is insufficient to constitute practical impairment within Rule 24(a)(2). The Commission is of course free to take a more stringent position in any future conciliation negotiations than that agreed upon by parties in previous litigation and approved in a consent decree. The recalcitrance of employers and unions based upon the decree of a single district court is speculative at best in view of the fact that the aggrieved employees are always able to bring suit. By comparison to the direct practical effect of a decision of one court on the intervenor's ability finally to prevail in another court present in *Nuesse* and *Atlantis, supra,* the possible influence of a court decision on negotiations whose result is not determinative of an issue is weak indeed.[11] Hence even as-

---

10. Cox v. United States Gypsum Co., 284 F.Supp. 74, 83–84 (N.D.Ind.1968), affirmed, 409 F.2d 289, 291 (7th Cir. 1969).

11. In asserting that the consent decree will impede its conciliatory efforts in future cases, the Commission does not complain about the impairment technically worked by *stare decisis.* That principle is one of *judicial* respect for prior court resolutions of an issue, and the Commission's complaint is about the pos-

sible adverse influence on private parties' willingness to accede to its views in negotiations. A court cannot appraise this influence on private parties in the same way as it can assess the weight a court is likely to give a prior judicial decision. See Atlantis Development Corp. v. United States, 379 F.2d 818, 828–829 (5th Cir. 1967). The former must remain more conjectural. Moreover, *stare decisis* effect has not been generally held to be a sufficient impairment of interest. In *Atlantis,* and to a lesser extent in Nuesse

suming a cognizable interest, we cannot find a practical impairment which satisfies the second condition of Rule 24(a) (2). Cf. Edmundsen v. State of Nebraska, 383 F.2d 123, 127 (8th Cir. 1967); 3B Moore's Federal Practice ¶ 24.09–1 [3] at 24–314.

## II. The Adequacy of the Representation of the Commission's Interest.

■ The final condition of Rule 24(a)(2) for intervention as of right is that the applicant's interest is not adequately represented by existing parties. Insofar as the Commission purports to represent the interests of the class of stewardesses, the district court concluded, and we think legitimately, that the parties were all fairly represented by competent counsel. The involvement of the stewardesses' own counsel justifies the assumption that their interests were adequately protected in the settlement agreement, even if the Commission's views differ.[12]

Insofar as the Commission purports to represent the public interest generally, the scheme of Title VII shows a legislative judgment that the public weal in such litigation was to be directly represented by the private suitor and, in some cases, by the Attorney General. By placing primary enforcement responsibility in the hands of the private litigant, specifically endowing his action with public interest characteristics,[13]

Congress largely equated the public interest in this kind of litigation with the efforts private parties are willing to expend to vindicate their Title VII rights.[14] See Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 401, 88 S.Ct. 964, 19 L.Ed.2d 1263. When the general societal interests cannot be adequately represented by private suitors, the Attorney General may seek to intervene in private suits or file a pattern and practice suit (42 U.S.C. §§ 2000e–5(e) and 2000e–6 (a)), and the Commission may refer matters to the Justice Department with such recommendation (42 U.S.C. § 2000e–4(f)(6)).[15] But the structure of Title VII is the unmistakable product of Congressional judgment that absent the participation of the Attorney General, the public interest is served by leaving the conduct of litigation to vindicate Title VII rights exclusively in the hands of private suitors.[16] Intervention as of right would substantially diminish the rights of the original parties to control the litigation. 3B Moore's Federal Practice ¶ 24.09–1[i] at 24–285.

"Although [the Commission] is entrusted with important and sensitive responsibilities of investigation and conciliation, it was not intended by Congress to pre-empt the ultimate rights of the claimant, the person the Act was designed to protect." Fekete v. United States Steel Corp., 424 F.2d 331, 336 (3d Cir. 1970).

---

v. Camp, 385 F.2d 694, 702 (D.C.Cir. 1967), there was a peculiar formidable difficulty which *stare decisis* would have worked under the circumstances. At best, the Commission has not asserted a comparable impairment.

12. See Note, *supra* note 4 at 1250.

13. See *id.* at 1197.

14. Even when a private party has not filed a charge and the Commission discovers discriminatory practices on its own and starts conciliation proceedings through the device of the Commissioner charge (42 U.S.C. § 2000e–5(a)), it cannot bring suit, but must either find a private

party, who will file a complaint or persuade the Attorney General to take action. 42 U.S.C. §§ 2000e–5(a), 2000e–4 (f) (6). See Note, *supra* note 4 at 1238.

15. See note 5 *supra*. We were advised at the oral argument that the Commission did not recommend the Attorney General's intervention in these two cases, and he has not intervened. United States v. United Brotherhood of Carpenters and Joiners of America, Local 169, 457 F.2d 210 (7th Cir. No. 71–1389, decided January 4, 1972).

16. See Note, *supra* note 4 at 1239.

Thus the public interest the Commission claims generally to represent is adequately served, by force of legislative judgment, through the efforts of private litigants in these actions under the vigilant protection of the court.[17] Where the Commission asserts interests peculiar to its specific public responsibility roles, but interests insufficient to justify intervention as of right, possibly it may seek permissive intervention under Rule 24(b) or it may seek leave to appear as amicus curiae.[18]

Whether it was wise or improvident in the public interest to exclude the Commission from control of the litigation is not our concern. However, the claims the Commission makes here do not exemplify improvidence. Toward this end we have examined the Commission's claims even though the Commission is not actually entitled to raise them.

■ The Commission claims that the settlement notice was incomplete and misleading. Rule 23(e) of the Federal Rules of Civil Procedure requires that notice be given to the members of a class before their action is dismissed or compromised. The notice required by the Rule must fairly apprise the members of the class of the proposed compromise and of the options open to dissenting class members in connection with the proceedings. Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., 323 F.Supp. 364, 378 (E.D.Pa.1970); see Advisory Committee's Note on the Proposed Rules of Civil Procedure, 39 F.R.D. 69, 107 (1966). Here the notice of the settlement hearing on the Agreement of Compromise and Settlement was published in the Union newspaper more than thirty days before the hearing. The Union mailed a copy of the notice to the 72 members of the class it had listed more than thirty days before the hearing, and the defendants respectively mailed a copy of the notice to all members of their plaintiff classes thirty days and three weeks before the hearing. The notice summarized the proceedings to date, informed the class members of the significance of judicial approval of the proposed agreement, told the class members that the agreement provided for their being placed on a "preferential hiring list" subject to their acceptance, and informed would-be dissenters that they might appear in person or by counsel to register their objections and present evidence in support thereof. When the memoranda of understanding were finalized, all class members were mailed a copy of the proposed agreements approximately ten days before the hearing date.

■ While the Commission has suggested that the manner of communicating the information and its content could have been improved, we conclude that the notice sufficiently conveyed the required information and afforded a reasonable time for those interested to make their appearance with due regard to the practicalities and peculiarities of the case, thus satisfying the demands of due process. Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 313–314, 70 S.Ct. 652, 94 L.Ed. 865.

17. Because of the unsophisticated character of many Title VII plaintiffs and because of the possibilities of less than diligent efforts by some representative plaintiffs, the courts have a weighty responsibility in the public interest to interpret meaningfully the technical provisions of the Act and assure that conduct and results of the litigation are fair to all aggrieved members of the plaintiff class. See Sprogis v. United Airlines, Inc., 444 F.2d 1194, 1201 (7th Cir. 1971), certiorari denied, 404 U.S. 991, 92 S.Ct.

536, 30 L.Ed.2d 543; Culpepper v. Reynolds Metals Co., 421 F.2d 888, 891 (5th Cir. 1970); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 428–429 (8th Cir. 1970); Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 715 (7th Cir. 1969).

18. See Note, *supra* note 4 at 1239. According to the airlines' brief, the parties do not object to the Commission's appearing amicus curiae in these cases.

■ Additionally, the Commission attacks the weight restrictions in the settlement agreements as violative of Title VII. However, weight restrictions have not been put in issue in these lawsuits. Their validity is being resolved in litigation elsewhere.[19] We agree with the Union that this pregnancy class should not be barred reemployment under the settlement negotiations while the weight question is still unresolved. In fact, the Commission's effort to defeat these settlements because of the weight restrictions supports the denial of intervention below. Cf. United States v. Automobile Manufacturers Ass'n, 307 F.Supp. 617, 619–620 (C.D.Cal.1969), affirmed, 397 U.S. 248, 90 S.Ct. 1105, 25 L.Ed.2d 280.

■ Finally, the Commission asserts that the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated. This is precisely the sort of gratuitous opinion that the parties are entitled not to have foisted upon them under the scheme of Title VII. Suffice it to say that as a general proposition the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation. This is especially true within the confines of Title VII where "there is great emphasis * * * on private settlement and the elimination of unfair practices without litigation." Oatis v. Crown Zellerbach Corp., 398 F. 2d 496, 498 (5th Cir. 1968). See Culpepper v. Reynolds Metals Co., 421 F.2d 888, 891 (5th Cir. 1970); Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969).

The orders of the district court denying the Commission's motion to intervene of right are affirmed, our stay order of August 25, 1971, is dissolved, and both causes are remanded for further consideration.

---

19. See Maguire et al. v. Trans World Airlines, 70 Civ. 3947 (S.D.N.Y.).