537 F.2d 915
 13 Fair Empl.Prac.Cas. 1437,
12 Empl. Prac. Dec. P 11,042
Carole Anderson ROMASANTA et al., Plaintiffs,
v.
UNITED AIRLINES, INC., a corporation, Defendant-Appellee,
Liane Buix McDonald, on her own behalf and on behalf of
others similarlysituated, Petitioning Intervenor-Appellant.
 No. 75--2063.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 17, 1976.
Decided July 1, 1976.
 
 Thomas R. Meites, Chicago, Ill., for appellant.
 Abner W. Sibal, Gen. Counsel, Equal Employment Opportunity Commission, Washington, D.C., for amicus curiae.
 Stuart Bernstein, Chicago, Ill., for defendant-appellee.
 Before FAIRCHILD, Chief Judge, and CUMMINGS and PELL, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case is related to Sprogis v. United Air Lines, Inc., 444 F.2d 1194 (7th Cir. 1971), certiorari denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543, where we held that United's policy of refusing to employ married stewardesses was discrimination based on sex in violation of Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e--2(a)(1)). During the pendency of the Sprogis appeal, Carole Romasanta[1] filed the present suit on behalf of herself and other United stewardesses who were similarly discharged. Appellant Liane McDonald ('petitioner') was a member of the putative class in Romasanta.
 
 
 2
 On December 6, 1972, while defendant was still denying liability, the district court filed a memorandum opinion and order that this case should not proceed as a class action. However, the court permitted twelve former stewardesses to intervene 'by way of joinder as additional parties plaintiff' since they had protested defendant's nomarriage rule by filing a grievance under the collective bargaining contract or by complaint to the Equal Employment Opportunity Commission or a comparable state agency. Petitioner and 140 other stewardesses[2] were thus excluded from the case.
 
 
 3
 On July 3, 1974, the district court granted the plaintiffs' motion for summary judgment and appointed a special master to recommend the compensation for each plaintiff. On October 3, 1975, the court issued a final order incorporating a settlement providing for reinstatement and backpay awards to the plaintiffs herein. In this order, the court only reserved jurisdiction to consider attorney's fees and costs.
 
 
 4
 Five days after the October 3, 1975, order terminating the litigation, petitioner first learned that the plaintiffs herein would probably not appeal the adverse class determination, and on October 17th she learned that there would definitely be no appeal. Consequently, on October 21st, she petitioned to intervene in order to file a notice of appeal with respect to the district court's final order of October 3, 1975, insofar as it reiterated striking the class action allegations from the complaint.[3] On October 23rd, petitioner filed a notice of appeal from the October 21st order denying her petition to intervene and also filed a notice of appeal from the October 3, 1975, order insofar as the district judge had refused to permit the cause to proceed as a class action. Because the district court erred in denying the petition to intervene and in refusing to certify a class, we reverse and remand.
 
 
 5
 Whether the petitioner should have been permitted to intervene is governed by Rule 24 of the Federal Rules of Civil Procedure. In pertinent part, Rule 24(b) (2) provides:
 
 
 6
 '(b) Permissive intervention. Upon timely application anyone shall be permitted to intervene in an action:
 
 
 7
 '(2) when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'
 
 
 8
 Defendant's primary contention is that the petition to intervene was not timely. The Supreme Court has held: 'Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review.' NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648. Among the relevant factors are the stage of the litigation at which the intervention is sought, the interests of the intervenors, the purposes of the statute under which the suit is brought and the relative harm to the parties. NAACP v. New York, supra, 413 U.S. at 366--369, 93 S.Ct. 2591; EEOC v. United Air Lines, Inc., 515 F.2d 946, 949 (7th Cir. 1975). Defendant argues that the petition to intervene would have been timely only if it was made immediately after the court refused to certify a class. We disagree.
 
 
 9
 In our view, petitioner's application was timely within the rule because she was not advised until October 17th that the plaintiffs would not appeal from Judge Perry's final order.[4] Plaintiffs' previous attempt to appeal from Judge Perry's interlocutory order denying class status, although unsuccessful (see note 3, supra), indicated that they would be willing to pursue the question after final judgment. Petitioner could reasonably rely on this representation and therefore her delay in filing the petition to intervene was excusable. See Jimenez v. Weinberger, 523 F.2d 689, 695--697 (7th Cir. 1975); Hodgson v. United Mine Workers, 153 U.S.App.D.C. 407, 473 F.2d 118, 130 (1972).
 
 
 10
 Our holding is consistent with the purposes of Title VII. Because the Civil Rights Act of 1964 attacks class-based discrimination, it is particularly appropriate that suits to remedy violations of the Act be brought as class actions. See Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719--720 (7th Cir. 1969). The relief sought in these suits seeks to establish equality, not only between the group discriminated against and other groups but also among the members of the victimized group. Albemarle Paper Co. v. Moody,422 U.S. 405, 417--421, 95 S.Ct. 2362, 45 L.Ed.2d 245; Bowe v. Colgate-Palmolive Co., supra, 416 F.2d at 719--720; Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 498 (5th Cir. 1968). The primary burden of enforcing Title VII rests with private plaintiffs. Air Lines Stewards & Stewardesses Ass'n v. American Air Lines, 455 F.2d 101, 108 (7th Cir. 1972); Jenkins v. United Gas Corp., 400 F.2d 28, 32 (5th Cir. 1968).[5] Because of the statutory reliance on private enforcement, the courts have suspended the requirement that each victim of discrimination file a complaint with the EEOC once one member of the class has filed the protest. Dodge v. Giant Food, Inc.,160 U.S.App.D.C. 9, 488 F.2d 1333 (1973); Bowe v. Colgate-Palmolive Co.,supra, 416 F.2d at 720; Oatis v. Crown Zellerbach Corp., supra.[6] That logic also compels the conclusion here that in court, as well as before the agency, the members may rely on the champion of the class until he or she abdicates. In this case we believe that abdication occurred when plaintiffs decided not to appeal the adverse class action determination. To hold otherwise would permit one member of the class to obtain benefits greater than other members.[7] This disparity would result, not from petitioner's lack of assertiveness, but from the district's erroneous ruling on the class action question. This result would be inconsistent with Title VII's goal to establish equality among members of the aggrieved class.
 
 
 11
 Finally, intervention would not prejudice the adjudication of the rights of the original parties, for defendant knew of the potential liability to this class since the commencement of the class action, and until October 17th defendant could reasonably expect this liability to be enforced through an appeal of the adverse class ruling. Jimenez v. Weinberger, supra, 523 F.2d at 701.
 
 
 12
 The other requirements of Rule 24(b)(2) have also been met. Petitioner's claim and the main action had questions of law in common, namely, the correctness of the striking of the class allegations and the remedy for the illegal no-marriage rule as applied to petitioner's class. The petition to intervene was not governed by the ten-day provision of Rule 59(e) of the Federal Rules of Procedure, for petitioner's motion did not ask the district court 'to alter or amend the judgment' but was for purposes of taking an appeal from the final judgment. It is entirely proper then to permit putative class members here to intervene for the purpose of pursuing an appeal of the adverse class action determination. Black v. Central Motor Lines, Inc., 500 F.2d 407, 408 (4th Cir. 1974); Smuck v. Hobson, 132 U.S.App.D.C. 372, 408 F.2d 175, 177--182 (1969) (en banc).
 
 
 13
 Because petitioner was entitled to be an intervenor and filed a timely notice of appeal from the final order terminating the litigation, we have power to examine the adverse class ruling and accordingly deny defendant's motion to strike that notice of appeal and to dismiss that appeal.
 
 
 14
 In this case, the district court judge refused to certify the class because the putative members had failed to show an interest in reemployment either by filing a grievance with the union or a complaint with the EEOC. It is well established, however, that the filing of a charge with the EEOC is not a prerequisite to recovery as a member of an injured class where one member of the class has done so. Bowe v. Colgate-Palmolive Co., supra, 416 F.2d at 720. Nor do we believe that each member of the class can be required to exhaust other remedies before recovering. See Albemarle Paper Co. v. Moody, supra, 422 U.S. at 414, n. 8, 93 S.Ct. 2362. The district court's order denying class action status must therefore be reversed.
 
 
 15
 In Bowe v. Colgate-Palmolive Co., supra, we stressed the appropriateness of a class action in a Title VII case. See also Air Line Stewards & Stewardesses Ass'n v. American Airlines, Inc., 490 F.2d 636, 643 (7th Cir. 1973), certiorari denied, 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773. On remand, the district court must comply with our ruling in Bowe that 'relief should be made available to all who were so damaged whether or not they filed (EEOC or comparable state agency) charges and whether or not they joined in the suit.' 416 F.2d at 721. As stated in Oatis v. Crown Zellerbach Corporation, 398 F.2d 496, 498 (5th Cir. 1968), 'It would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC.' As petitioner has explained in her affidavit supporting her petition to intervene, she knew that other former United Air Lines' stewardesses were challenging the no-marriage policy and therefore did not file a discrimination charge against United or a grievance under the collective bargaining agreement. We conclude that the women in petitioner's class are entitled to participate in this case under Bowe unless they choose to opt out under Rule 23(c)(2) of the Federal Rules of Civil Procedure.[8]
 
 
 16
 The district court's orders of October 3 and 21, 1973, are reversed with instructions to permit petitioner to intervene on her own behalf and on behalf of her class, to treat the case as an action by her class, and to fashion relief for her class.
 
 
 17
 PELL, Circuit Judge, dissenting.
 
 
 18
 The Romasanta suit out of which the present issue arose required five years for a resolution to be reached. When that suit reached a critical point insofar as petitioner's interests were concerned more than three years ago, it in my opinion was incumbent upon her then to take immediate affirmative steps to protect her interests if she wanted to take advantage of this lawsuit as a forum for her claims.
 
 
 19
 In my opinion Judge Perry clearly acted properly when he denied the motion to intervene as untimely:
 
 
 20
 THE COURT: Well, in my judgment, gentlemen, this is five years now this has been in litigation, and this lady has not seen fit to come in here and seek relief from this Court in any way during that period of time, and litigation must end. I must deny this motion. Of course, this is an appealable order itself, and if I am in error then the Court of Appeals can reverse me and we will grant a hearing, but in my judgment this is too late to come in.
 
 
 21
 Since I agree with Judge Perry and disagree with the majority finding that Judge Perry abused his discretion, I respectfully dissent.
 
 
 22
 Questions of timeliness are peculiarly appropriate for determination by the trial court, and it is for that reason that the appropriate standard for review is to determine whether there has been an abuse of discretion. The United States Supreme Court, in NAACP v. New York, 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973), in affirming the lower court's denial of a motion to intervene on the basis of timeliness, set forth the standard by which this Court must review Judge Perry's ruling as follows (413 U.S. at 365--66, 93 S.Ct. at 2602--2603):
 
 
 23
 Intervention in a federal court suit is governed by Fed.Rule Civ.Proc. 24. Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b) that the application must be 'timely.' If it is untimely, intervention must be denied. Thus the court where the action is pending must first be satisfied as to timeliness. Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion: unless that discretion is abused, the court's ruling will not be disturbed on review. (Footnotes omitted.)
 
 
 24
 This same standard has consistently been applied in cases involving Title VII of the Civil Rights Act. E.g., EEOC v. United Air Lines, Inc., 515 F.2d 946 (7th Cir. 1975); Black v. Central Motor Lines, Inc., 500 F.2d 407 (4th Cir. 1974).
 
 
 25
 In NAACP, the Supreme Court upheld the district court's determination that the motion to intervene was untimely, even though it was filed only seventeen days after the would-be intervenors allegedly became aware of the suit, stating that 'it was incumbent upon the appellants, at that stage of the proceedings, (a critical stage) to take immediate affirmative steps to protect their interests . . ..' 413 U.S. at 367, 93 S.Ct. at 2604.
 
 
 26
 In EEOC, supra, this court denied a motion to intervene as untimely in a situation much less extreme than the instant case. A pattern and practice suit was brought in April 1973, under Title VII of the Civil Rights Act, alleging discrimination against black and female employees of United Air Lines. The complaint was amended in February 1974 to include allegations of discrimination against Spanish-surnamed and Asian-American employees. When two organizations representing these latter groups attempted to intervene in July 1975, this Court affirmed the denial of intervention as untimely, even though the trial had not yet begun, because the intervenors had offered no excuse for waiting 5 months after the complaint was amended and their interest in the action first created. See also SEC v. Bloomberg, 299 F.2d 315 (1st Cir. 1962); Hoots v. Pennsylvania, 495 F.2d 1095, 1097 (3d Cir. 1974), cert. denied, 419 U.S. 884, 95 S.Ct. 150, 42 L.Ed.2d 124; and Westward Coach Manufacturing Company, Inc. v. Ford Motor Co., 388 F.2d 627, 635 (7th Cir. 1968), cert. denied, 392 U.S. 927, 88 S.Ct. 2286, 20 L.Ed.2d 1386.
 
 
 27
 In a class action situation, the determination of when intervention is first appropriate relates to the question of adequacy of representation. In a true class action, it is unnecessary for an unnamed class member to intervene as long as his interests are being protected by his class representatives. In Alleghany Corporation v. Kirby, 344 F.2d 571 (2d Cir. 1965), cert. granted, 381 U.S. 933, 85 S.Ct. 1772, 14 L.Ed.2d 698, cert. dismissed as improvidently granted, 384 U.S. 28, 86 S.Ct. 1250, 16 L.Ed.2d 345 (1966), where the Second Circuit denied a 'lastminute' attempt at intervention by shareholders in a derivative suit to set aside a settlement on behalf of their corporation, the court explained the connection between timeliness and adequate representation (344 F.2d at 574):
 
 
 28
 As we see it, the timeliness requirement, specifically articulated in Rule 24(a), is related to the question whether the shareholders' interests are or may be inadequately represented, for whether an application to intervene is prompt or tardy also turns on when the interests of the proposed intervenors were no long properly represented.
 
 
 29
 When petitioner's application for intervention is viewed in the light of these cases, it appears clear to me that the motion was untimely. Petitioner admits knowledge of the class action denial in Romasanta in 1972 and yet offers no persuasive reason for her failure to petition to intervene then. Once the class was denied, and the suit proceeded as an individual action, she had no reason to believe her interests were being represented or protected by others. This was particularly true since the class action denial had the effect of excluding from the case all those who, like petitioner, had not protested the no-marriage rule. There was no longer anyone similarly situated to petitioner in the case.
 
 
 30
 Petitioner admits knowledge of the course of the Sprogis (or related) litigation from the very start (i.e., September 1968, the time of her alleged discharge). Yet she made no attempt to intervene in Sprogis to appeal from the denial of class action in 1972 or from the final order in 1974.[1]
 
 
 31
 But instead, petitioner, with claimed knowledge of the pending lawsuits concerning the no-marriage rule, did nothing and waited seven years to identify herself as one who sought relief. Petitioner now wants to start this case all over again--three years after Romasanta was declared not to be a class action, after many others were permitted to intervene, and after extensive negotiations in which the parties were finally able to resolve the issues in this case.
 
 
 32
 Consistent with petitioner's unhurried conduct is the fact that her motion to intervene violates the only procedural rule under which her motion can be brought, i.e., Fed.R.Civ.P. 59(e). Rule 59(e) provides that '(a) motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.' Petitioner's motion to intervene was clearly a motion to alter or amend the judgment to add an additional party. It was served on October 17 and heard on October 21, 1975, all well beyond ten days after the entry of the final order on October 3.
 
 
 33
 It is important to note that had she sought intervention immediately after the denial of class status, and her intervention had been denied, the intervention issue would have been before this court three years ago. Furthermore, assuming that her intervention had been denied because of petitioner's failure to protest the no-marriage rule--the requirement which was the basis of the court's holding that this action lacked the requisite numerosity to proceed as a class action--then that issue would have been before this court and decided three years ago. Instead, petitioner chose to sit back and allow others to assume the costs and risks in prosecuting their individual actions, and now she attempts to revive her dead claim through another suit which after years of legal argument and negotiation was finally settled to the satisfaction of all parties.
 
 
 34
 When a class action is denied, former putative class members may not ignore this fact and continue on the assumption the suit is a class action ('spurious' or otherwise), as does petitioner. The denial of class status is a critical point which puts putative class members on notice that they must act to protect their rights. The tolling procedure established by the Supreme Court in American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), would have no meaning without its corollary requirement that as soon as the class is decertified, former class members who want relief must 'make timely motions to intervene' (414 U.S. at 553, 94 S.Ct. 756).
 
 
 35
 Finally, it should be noted that the timeliness requirements of Rule 24 have been interpreted more strictly by the courts after judgment, where absent very unusual circumstances intervention is not permitted. United States v. Blue Chip Stamp Co., 272 F.Supp. 432, 436 (C.D.Calif.1967), affirmed per curiam sub nom. Thrifty Shoppers Scrip Co. v. United States, 389 U.S. 580, 88 S.Ct. 693, 19 L.Ed.2d 791 (1968):
 
 
 36
 The requirement of timeliness is not without foundation. The interest in expeditious administration of justice does not permit litigation interminably protracted through continuous reopening. A motion to intervene after entry of the decree should therefore be denied in other than the most unusual circumstances.
 
 
 37
 Accord, Chase Manhattan Bank v. Corporation Hotelera de Puerto Rico, 516 F.2d 1047, 1050 (1st Cir. 1975) (per curiam); Pennsylvania v. Rizzo, 66 F.R.D. 598, 600 (E.D.Pa. 1975); 3B Moore's Federal Practice § 24.13(1) (1975 ed.); 7A Wright & Miller, Federal Practice and Procedure § 1916, at 579--80 (1972).
 
 
 38
 Since, in my opinion, the timeliness issue is dispositive of this case, I have not deemed it necessary to advert to the other issues raised on this appeal.
 
 
 
 [1]
 Brenda Bailes Altman was added as a plaintiff on October 9, 1970
 
 
 [2]
 The figure is derived from p. 2 of petitioner's main brief and p. 13 of the EEOC's brief and may be excessive. Defendant asserts there are only 30 in this class (defendant's main brief 50)
 
 
 [3]
 On December 27, 1972, we refused to grant leave to appeal from the district court's December 6, 1972, interlocutory order striking the class allegations, so that an appeal first became appropriate after the district court's final order of October 3, 1975. The denial of the class allegations was not appealable earlier. Anschul v. Sitmar Cruises, Inc., --- F.2d --- (7th Cir., decided May 17, 1976)
 
 
 [4]
 EEOC v. United Air Lines, Inc., supra, is not to the contrary, for there representation of the intervenor's interest by existing parties was adequate when intervention was sought. Intervention was sought here as soon as it was apparent that plaintiffs would not appeal the final order denying class status
 
 
 [5]
 Because the Voting Rights Act in force at the time of the suit did not authorize a private action, NAACP v. New York, supra, relied upon by defendants is distinguishable. Further, in NAACP there was no support for the claim that the representation of the intervenor's interests by the United States was inadequate. 413 U.S. at 368, 93 S.Ct. 2591
 
 
 [6]
 See also American Pipe & Construction Co. v. Utah, 414 U.S. 538, 551, 94 S.Ct. 756, 38 L.Ed.2d 713. The specific holding in American Pipe that the statute of limitations is tolled only during the pendency of the motion to certify a class and begins to run anew if the motion is denied is not applicable here. The statute of limitations in Title VII actions is suspended once one member of the class initiates the grievance mechanism. See Bowe v. Colgate-Palmolive Co., supra, 416 F.2d at 720
 
 
 [7]
 The plaintiffs and the petitioner must be considered to be members of the same class. Any distinction between them such as the filing of an EEOC or state agency complaint or a grievance with the union is not significant. Once a timely administrative complaint has been filed by one stewardess, all others who were discharged by operation of the rule are entitled to recover. Similarly, the filing of a union grievance cannot be made a precondition of recovery. Albemarle Paper Co. v. Moody, supra, 422 U.S. at 414, n. 8, 95 S.Ct. 2362
 
 
 [8]
 This opinion does not preclude the defendant from mitigating liability or rebutting the damage claim of some members of petitioner's class. Sprogis v. United Air Lines, Inc., 517 F.2d 387, 392 (7th Cir. 1975)
 
 
 [1]
 Petitioner argues that she relied upon the parties in Romasanta to appeal the class action decision. But ALPA, the party responsible for bringing both the Sprogis and Romasanta actions, did not appeal the class denial in Sprogis (nor did anyone else), so there appears to be no reason for petitioner's reliance on the same parties' appealing the class decision in Romasanta