**F. W. WOOLWORTH CO.,**
Plaintiff-Appellee,

v.

**MISCELLANEOUS WAREHOUSEMEN'S UNION, LOCAL NO. 781, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendant,**

Appeal of Gerald FELL, Clifford Kendricks and Ernest Turner, Applicants for Intervention.

No. 79–1839.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1980.

Decided Aug. 7, 1980.

Harvey A. Nathan, Chicago, Ill., applicants for intervention.

Francis X. Dee, Newark, N.J., for plaintiff-appellee.

Before SWYGERT, BAUER and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

This action arose from the decision of plaintiff, F. W. Woolworth Co. ("Woolworth"), to discharge three of its employees, Gerald Fell, Clifford Kendricks and Ernest Turner. Their discharge was the subject of an arbitration proceeding pursuant to the collective bargaining agreement between Woolworth and the Miscellaneous Warehousemen's Union, Local No. 781, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the "Union"), the labor organization which represented the discharged employees. The arbitrator ordered the reinstatement of Fell, Kendricks and Turner, so Woolworth brought this action in the dis-

trict court under § 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185 (1976), to vacate the arbitrator's award.

The Union appealed and argued in support of the arbitration award in the district court but Woolworth's motion for summary judgment was granted and the award was vacated. The Union did not seek appellate review of the district court's decision so the three employees moved to intervene and filed notice of the instant appeal. The employees did not claim that the Union had breached its duty of fair representation. The district court denied their motion to intervene, as well as Fell's separate motion for reconsideration of the district court's decision.

The issues presented by this appeal are (1) whether the employees may intervene in order to bring this appeal and (2) whether the district court properly vacated the arbitrator's decision. We find that the three individual employees had standing to intervene in order to bring this appeal. We also reverse the district court's order vacating the arbitration award.

*Facts*

Fell, Kendricks and Turner were employed by Woolworth at its Chicago, Illinois, distribution center where they were represented by the Union.[1] Fell had been employed by Woolworth since 1957, Turner since 1966 and Kendricks since 1975. All three employees were discharged in early 1978 for violation of Rule 10 of Woolworth's rules and regulations. Rule 10 states that

When an employee is absent from work, he shall notify the Company at the earliest possible time, giving reason for such absence, and keep the Company advised daily as to the probable date of return to work. Excessive absenteeism is cause for discharge.

The facts surrounding each discharge may be summarized as follows. On Tuesday, January 24, 1978, Fell telephoned

---

1. These facts appear from the record of the arbitration proceeding and are undisputed, except as otherwise indicated.

Woolworth's personnel manager, Steve Knawa, and informed him that he (Fell) was ill and would not be coming to work. There is some dispute as to whether Fell told Knawa how long he would be absent. Thereafter, Fell did not call in and he was discharged when he reported for work on Monday, January 30, 1978.

Turner broke his hand on December 19, 1977, and was under a doctor's care with Woolworth's knowledge. Woolworth expected Turner to return to work on February 21, 1978, based upon a previously submitted medical report. When Turner did not return to work on February 21, and did not call in, he was discharged. On February 27, 1978, Turner returned to work and found out he had been discharged. That afternoon Turner submitted a second medical report indicating that he (Turner) would not be able to return to work until March 1, 1978.

Kendricks was on sick leave and was released by Woolworth's physician to return to regular duties on April 17, 1978. Kendricks called in on April 18 and stated that he was under another doctor's care and would bring in a note the next day. Kendricks returned to work on April 24, 1978, with a doctor's note dated April 20 indicating that Kendricks was still under the physician's care. Kendricks was under the impression that his doctor had called on April 19. The records indicated that the doctor did call but only inquired about insurance coverage.

Article X of the collective bargaining agreement between Woolworth and the Union provides that

No employee shall be discharged except for just cause. Violation of any Company rule shall be considered a just cause. Any dispute with respect to justification for a discharge of any employee shall be considered a grievance and subject to the grievance and arbitration machinery provided in this agreement. The term "just cause" shall not be limited solely to violation of Company rules.

The issue presented for arbitration was whether Woolworth had "just cause" for discharging these employees. If the arbitrator determined that Woolworth did not have just cause, he was to order an appropriate remedy.

Although Rule 10 suggests that employees must call in daily when absent from work, the arbitrator found that in practice the requirement was to report every three days, and this finding was uncontested. The arbitrator also found that under certain conditions the three day rule had not been enforced, stating that

As a matter of practice under this Rule, employees who are hospitalized, on Workmen's Compensation, injured in a car accident, on Jury Duty or on funeral leave are not required to call in every three days. Other extenuating circumstances, if they are clear and understandable, may also provide relief from the three days rule.

The arbitrator found that all of the grievants were guilty of a "technical violation" of Rule 10. However he found that, with respect to Rule 10, the "Rule itself does not . . . provide for absolute discharge . . . ." He further found that an employee who fails to report for three days is only "subject to discharge." He also noted that each grievant had a legitimate illness of which Woolworth was aware and that each had called in initially. The arbitrator found that in each case "there was some confusion as to the exact date on which the grievant was to return to work." He differentiated these cases from those in which an employee does not call in at all.

Reviewing all of the facts and evidence, the arbitrator concluded that the violation of Rule 10 was only "technical" and that the just cause standard for discharge provided for in Article X had not been met. The arbitrator directed Woolworth to reinstate Fell, Kendricks and Turner with full backpay except for certain periods of time which would stand as suspensions without pay (30 days for Turner and 90 days for Fell and Kendricks).

Woolworth then brought this action in the district court to vacate the arbitration award and further brought a motion for

summary judgment toward that end. The district court granted Woolworth's motion for summary judgment and vacated the arbitration award because it concluded that since there was a technical violation of Rule 10, Woolworth had the right to impose the penalty of discharge for violation of the Rule. The district court found that the arbitrator had exceeded his authority by ordering a lesser penalty of suspension for the employees' infraction of Rule 10.

## Discussion

1. *Right to Intervene and Standing to Appeal*

When the Union did not file a notice of appeal from the district court's grant of summary judgment, Fell filed a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure, reciting that the Union was not taking an appeal of the district court's order granting summary judgment and that without such an appeal Fell was foreclosed from challenging the district court's order setting aside the arbitration award. At the same time Fell filed a motion for reconsideration, in which he asserted that he was the real party in interest and that the arbitrator had not exceeded his authority. Subsequently, Turner and Kendricks filed their motion for intervention.

█ The district court denied the motions for intervention and for reconsideration, finding that the movants lacked standing, citing *Acuff v. United Paper Makers and Paper Workers, AFL–CIO*, 404 F.2d 169 (5th Cir. 1968), *cert. denied*, 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969). Fell, Kendricks and Turner then filed their notice of appeal. The issue presented here is whether under federal substantive labor law and under Rule 24 of the Federal Rules of Civil Procedure, employees have standing to intervene to prosecute an appeal from an order of the district court setting aside an arbitration award in their favor when their union, which has represented them up to that point, declines to take the appeal but does not object to the employees' attempt to intervene and prosecute the appeal.

### A. Federal Substantive Labor Law

We agree with Woolworth's contention that principles of federal substantive labor law affect the right of Fell, Kendricks and Turner to intervene in an action concerning the collective bargaining agreement entered into by their Union and Woolworth. We shall discuss these labor law principles before we determine whether the requirements of Rule 24 have been met.

█ An individual employee may, with significant limitations, bring suit against his employer in federal district court under § 301(a) of the LMRA to resolve a dispute arising under the collective bargaining agreement between his union and his employer. *Smith v. Evening News Association*, 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962). For example, an employee may maintain such a suit against his employer for wrongful discharge. *See Harrison v. Chrysler Corporation*, 558 F.2d 1273, 1276 (7th Cir. 1977). However an employee is not entirely free to bring such a suit if the collective bargaining agreement provides an exclusive procedure for the resolution of disputes arising under it.

Thus in *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), the Supreme Court held that an employee could not sue his employer for breach of the collective bargaining agreement unless he had first attempted to utilize the grievance procedures established by the collective bargaining agreement. This approach is in accordance with Congressional policy as expressed in § 203(d) of the LMRA: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes . . . ." 29 U.S.C. § 173(d) (1976). Requiring employees to use this grievance procedure is beneficial to the union because it allows the union to participate in the administration of the agreement on a continuing basis. It also benefits the employer because it limits the remedies available to an aggrieved employee. *Maddox, supra*, 379 U.S. at 653, 85 S.Ct. at 616.

In *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), an employee sued his employer for wrongful discharge in violation of the collective bargaining agreement after his union refused to submit his grievance to arbitration. The Supreme Court held that an employee's union had a duty to represent its members fairly in grievance proceedings conducted pursuant to the collective bargaining agreement, but an employee could not sue his employer under these circumstances unless he alleged that the union had violated its duty of fair representation by not submitting his claim to arbitration.[2] The Court in *Vaca* noted that the employee did not have an absolute right to have his grievance submitted to arbitration, and the union could, in the exercise of its sound discretion, supervise the grievance procedure and decide whether to seek arbitration of a particular dispute. 386 U.S. at 191, 87 S.Ct. at 917. The Court stated that it was appropriate for the union to control the grievance procedure for several reasons:

(1) the union and the employer could attempt in good faith to settle most grievances short of arbitration without individual employees forcing them to arbitrate claims which the union and the employer did not find meritorious;

(2) similar grievances could be treated consistently;

(3) the cost of the grievance procedure would not be increased by the arbitration of frivolous claims. *Id.*

Several courts have also held that an employee may not attempt to vacate an arbitration award unless the union has breached its duty of fair representation. For example, in *Acuff v. United Paper Makers and Paper Workers, AFL–CIO*, 404 F.2d 169 (5th Cir. 1968), *cert. denied*, 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969), 63 employees had been discharged by the Scott Paper Company as a result of unauthorized work stoppages, and the union brought suit under § 301(a) of the LMRA to compel arbitration. After arbitration proceeded under stipulation between the company and the union, the arbitrator denied the grievances of 16 employees but ordered the reinstatement of the others. The employees whose grievances had been denied then filed a motion to intervene in the § 301(a) suit in an attempt to vacate the arbitration award. Their attempted intervention was opposed both by the company *and by the union*. The court said in denying the motion to intervene:

The issue in this case is fundamental, yet simple. In order to effectuate the purposes of the labor statutes employees are empowered to organize. This, of course, has resulted in enormous benefits but entails certain burdens as well. One of these is that to some extent the interests of particular individuals are subordinated to the interests of the group both at the contract negotiation stage and thereafter. [Citing cases] This is necessary if a union is to function efficiently. As a result, a union may properly determine not to pursue a member's grievance to the arbitration stage at all. 'If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation.' *Vaca v. Sipes*, 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967). It would be paradoxical in the extreme if the union, which is authorized to decide whether a grievance is to be pursued to the arbitration stage at all, could not be authorized to assume full responsibility for a grievance it did pursue, without the intervention of the individual union members immediately concerned.

This is not to say, however, that we would afford no relief even if a union in

**2.** This principle has been applied in many cases, *e. g., Cady v. Twin Rivers Towing Company*, 486 F.2d 1335 (3rd Cir. 1973); *Moore v.* *Sunbeam Corporation*, 459 F.2d 811 (7th Cir. 1972); *Lomax v. Armstrong Cork Company*, 433 F.2d 1277, 1280 (5th Cir. 1970).

refusing to pursue a grievance or in its manner of advocacy were motivated by animus against an individual union member. But a 'breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.' *Vaca v. Sipes, supra* at 190, 87 S.Ct. at 916. Certainly this is not such a case. Nothing is alleged that plausibly suggests bad faith on the part of the union. The union pursued the grievance with energy and indeed, in large measure, with success. The employees cannot equate lack of complete success with bad faith any more than they could if their own lawyers had been involved. 404 F.2d at 171. [Footnote omitted].

Similarly, in *Andrus v. Convoy Company*, 480 F.2d 604 (9th Cir. 1973), *cert. denied*, 414 U.S. 989, 94 S.Ct. 286, 38 L.Ed.2d 228, several employees brought suit under § 301(a) to set aside an arbitration award but their action was dismissed because they did not allege that their union had breached its duty of fair representation. However if an employee alleges and proves that the union breached its duty it may attack the arbitration award. *Harrison v. Chrysler Corporation*, 558 F.2d 1273, 1276–77 (7th Cir. 1977) and *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562–64, 96 S.Ct. 1048, 1055–1056, 47 L.Ed.2d 231 (1976).

■ Thus under the system of collective bargaining mandated by the LMRA, the union (in contrast to the individual employees) is in control of the collective bargaining process and may, in the exercise of good faith and sound discretion, take employee grievances to various steps of the grievance procedure, including the ultimate step of arbitration, so long as it does not violate its statutory duty of fair representation. *Vaca v. Sipes, supra*. The grievance procedure as such reaches its culmination in the arbitration award. But in addition, individual employees may not intervene in or maintain suits under the collective bargaining agreement to *set aside* arbitration awards reached in pursuance of the grievance pro-

cedure, *particularly in opposition to the union*, so long as the union has represented the employees fairly. *Acuff* and *Andrus*, both *supra*. These principles, and the policies underlying them, reflect the philosophy of collective bargaining incorporated in the LMRA and exemplify the fundamental policy of entrusting labor disputes and grievances to the good faith discretion of exclusive bargaining agents.

The instant case, however, involves neither attempted individual employee intervention in the grievance procedure nor efforts by individual employees to *set aside* the ultimate result of the grievance procedure, namely the arbitration award. Here we have a situation where the grievance procedure has culminated in an arbitration award, which Woolworth has sought to vacate through an action under § 301(a) of the LMRA. The Union has opposed Woolworth's efforts in the district court. The record is bereft of any evidence that, in failing to prosecute an appeal from the order of the district court setting aside the award, the Union is seeking to carry out any collective bargaining policy or strategy. In evincing no objection to the actions of the putative intervenors, the Union at the very least has indicated indifference to the pursuit of the appeal, as well as to the result reached on appeal (although we must presume that the Union would prefer its position in the district court to be vindicated on appeal).

■ Woolworth argues that the circumstances under which individual employees may enforce the collective bargaining agreement between their employer and their union are extremely limited, particularly where—as here—the collective bargaining agreement contains a contractual procedure for dispute resolution and delegates the power to invoke that procedure to the Union and Woolworth. While we agree that under *Vaca* an employee is "bound by the terms of that agreement which governs the manner in which contractual rights may be enforced," 386 U.S. at 184, 87 S.Ct. at 914, we do not agree with Woolworth's argument that these employees may not in-

tervene in judicial proceedings concerning the arbitration award because they have no right under the contract to demand arbitration.

We are of this view because the contract in the instant case merely establishes a grievance procedure consisting of several informal steps culminating in the reference of the dispute to arbitration. Article XI, § 3 of the contract, respecting the ultimate resolution of disputes, provides that "[t]he decision of the Board of Arbitration shall be final and binding upon parties to this agreement, both of whom agree to expedite this arbitration and share expenses equally." Thus the grievance procedure as such culminates in the arbitration award and does not include suits brought under § 301(a) to vacate the award. The fact that an employee could not demand arbitration under the contract does not determine whether he can intervene in an action brought by the employer in a court of law to vacate the award.

Woolworth also argues from the cases discussed, *supra*, that employees may not intervene in a suit brought under the circumstances of the instant case. We do not agree with Woolworth's interpretation of these cases, particularly *Acuff*. The decisional authority governing the rights of individual union members to participate in the process of dispute resolution after arbitration suggests that individual members may not bring suit in an attempt to have the award set aside. *See Andrus, supra.* Nor may they intervene in an ongoing action in order to vacate an award, particularly in opposition to the union. *See Acuff, supra.* However the instant case differs substantially from *Andrus* and *Acuff* in two respects: (1) the Union in the instant case does not oppose the intervention and (2) the employees wish to intervene in order to uphold the arbitration award. We believe that union opposition to the intervention together with the employees' attack on the award, which play no part in the instant case, essentially determined the result in *Andrus* and *Acuff*.

Since the circumstances of the instant case differ substantially from the facts of the cases discussed above, it is necessary to weigh the equities favoring intervention by employees seeking to uphold the arbitration award against the policy favoring exclusivity of union representation. Fundamental fairness demands such a balancing process and the balance here tips decisively in favor of employee intervention.

The factors favoring intervention by the employees in the instant case are: (1) the employees are defending, not attacking, the arbitration award, which stands as the culmination of the contractual grievance procedure, (2) the Union has taken a position in the district court in defense of the award, (3) the Union has not objected to the employees' intervention or appeal and (4) in the absence of intervention these employees lose what may be their final day in court, resulting in a sharply focused perception of unfairness.

Weighing against these considerations are the following factors: (1) the Union will no longer be an active participant in the litigation, (2) conceivably the Union may have decided to cede the claims of these employees in an agreement with Woolworth foregoing an appeal in exchange for some other concession by Woolworth (although there is no record indication of this) and (3) the litigation will be prolonged, thus increasing the cost to Woolworth and to the judicial system. We conclude that these factors do not outweigh the reasons, noted above, for allowing intervention.[3]

The employees here are merely seeking the ultimate vindication of the arbitration process which the Union originally demanded and has consistently pursued and which Woolworth repudiated by seeking to have the arbitration award set aside. If there were even any colorable conflict between

---

3. We believe that the cited factors, pro and con, are significant in the context of the instant case, but we also note that each application for intervention must be evaluated in light of its unique facts and circumstances, which might entail the consideration of factors which are not significant in the instant case.

the individual employees and the Union as to whether an appeal ought to be taken or as to what stance ought to be taken on appeal, we assume that the Union might prevail in the balancing process which we have essayed. If there were indications that the Union agreed not to appeal in exchange for other consideration from Woolworth, intervention might be inappropriate or, conversely, questions of fair representation might conceivably arise. When, as here, the Union is merely passive at a late stage in the litigation, we ought reasonably to assume that no conflicts of policy are present.

Allowing the employees to intervene in order to prosecute the instant appeal does not conflict with any of the considerations of policy mentioned in *Vaca, Maddox* or *Acuff.* For example, allowing intervention does not increase the cost of the arbitration process by increasing the number of cases arbitrated or decrease the union's ability to decide which cases to submit to arbitration. Intervention also strengthens the grievance procedure by increasing the possibility that the arbitrator's decision will be upheld through review of a district court order vacating that decision. Further, the union's interest in supervising the administration of the agreement is not affected by allowing intervention at this point, and the union will save the cost of pursuing an appeal.

The issues presented in the instant case should be governed by flexible, pragmatic and, above all, just, procedural principles, not by some suffocating rule that unions may, under any imaginable circumstances, be the only party opposing the employer in proceedings involving the construction of collective bargaining agreements.[4] Any argument that the contractual function of the union in deciding which grievances should be pursued would be undermined by allowing these employees to take this appeal is quite specious. The function of the Union has been perfected by its winning of the arbitration (which it subsequently supported). So long as the employees intervene in support of the award and without the opposition—formal or informal—of the Union, they are merely complementing the activities of the Union and seeking to vindicate the purposes for which the Union undertook their representation in the first place.

As the matter stands in the district court, not only the rights of the Union but also the specific rights of these employees, as crystallized in the arbitration award, have been defeated. After arbitration these employees have a specific vested interest in the award going beyond the Union's collective claim. Certainly absent any suggestion that there is some collective Union interest in refusing to take an appeal, the right to appeal, which these employees would have if they were named parties, is unfairly defeated by requiring the Union to pre-empt all representation at the appellate court level. An approach which denies these employees their ultimate day in court subverts justice in the name of meaningless abstractions disguised as substantive labor law. Under that dispensation, a union could appear as a dog in the manger, serving no meritorious end. In addition, excluding intervenors, such as these, might encourage an employer to depreciate employee rights in a seemingly sanctimonious concern for the niceties of collective bargaining.

Thus no considerations of policy are presented to defeat the strong equities and fundamental rights of the individual employees in seeking enforcement of the arbitration award, which was the culmination of the grievance procedure provided under

---

4. We note that a similar flexible approach was used by the Supreme Court in *Trbovich v. United Mine Workers*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). In *Trbovich* the Court allowed an individual to intervene in a suit brought by the Secretary of Labor under § 402(b) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 482(b), after determining that his intervention would not contravene any of the policies of the LMRDA or unduly burden the Secretary or the union. *See also Brennan v. Silvergate District Lodge No. 50, International Association of Machinist and Aerospace Workers, AFL-CIO*, 503 F.2d 800 (9th Cir. 1974).

the collective bargaining agreement. We therefore conclude that these employees may, as a matter of federal substantive labor law, intervene in order to bring the instant appeal.

### B. *Intervention under Rule 24*

Since we have determined that federal substantive labor law does not prevent Fell, Kendricks and Turner from intervening in order to prosecute this appeal, we must determine whether they have met the requirements of Fed.R.Civ.P. 24. Rule 24(a)(2) provides that upon timely application anyone shall be permitted to intervene in an action as of right:

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

We conclude that these three employees are entitled to intervene as of right under Rule 24(a)(2).

Kendricks, Fell and Turner have a direct interest in the arbitration award which is the subject of the instant suit because the award ordered Woolworth to reinstate them. They also have an interest in a more formal sense because the arbitration proceeding is the last step in the grievance procedure established by the collective bargaining agreement. Employees have an interest in the collective bargaining agreement (and its grievance procedure) and may sue under § 301(a) to enforce this agreement (unless such a suit would be inappropriate for the reasons discussed in Part A, *supra* ). Thus in *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976), the Supreme Court stated:

> Section 301 contemplates suits by and against individual employees as well as between unions and employers; and contrary to earlier indications § 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees

such as wages, hours, overtime pay and *wrongful discharge. Smith v. Evening News Association, supra,* [371 U.S.] at 198, 200 [, 83 S.Ct. at 270.]. [Emphasis supplied].

We therefore conclude that these employees have a sufficient interest in the arbitration award for purposes of Rule 24(a)(2).

The employees are so situated that the judgment of the district court and the Union's failure to appeal would, through application of the doctrine of *res adjudicata,* impair, impede or destroy their ability to protect their interests. Additionally, since the Union has withdrawn from the case, the interests of the employees would not be adequately represented by "existing parties."

The employees did not attempt to intervene until after the district court granted Woolworth's motion for summary judgment but their application for intervention was timely for two reasons. First, the employees presumably could not intervene until Woolworth's motion for summary judgment was granted and the Union decided not to appeal because of the principles of substantive labor law discussed in Part A, *supra.* Second, the employees were represented by the Union, an "existing party," until it decided not to appeal, so until that decision the employees could not intervene under Rule 24(a)(2). We note that in the context of class actions, this court has held that an application for intervention is timely if it is brought shortly after the class representative indicates that she will not appeal an order denying class status. *Romasanta v. United Airlines, Inc.,* 537 F.2d 915 (7th Cir. 1976), *aff'd sub nom., United Airlines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 52 L.Ed.2d 423 (1977). In *Romasanta* we stated that timeliness is to be determined from all the circumstances of the case and that members of the class "may rely on the champion of the class until he or she abdicates. In this case we believe that abdication occurred when plaintiffs decided not to appeal the adverse class action determination." 537 F.2d at 918–19. Having examined the circumstances of the in-

stant case, we conclude that the employees' application for intervention was timely because, until the Union decided not to appeal, the employees could not intervene under Rule 24(a)(2) or as a matter of federal labor law.[5]

We therefore find that the district court erred in denying the applications of Fell, Kendricks and Turner for intervention because they met the requirements of Rule 24(a)(2) and federal substantive labor law does not bar their intervention.

### 2. Review of the Arbitration Award

■ Having determined that the employees' applications for intervention should have been granted and that these appeals are properly before us, we reach the question whether the district court was correct when it granted Woolworth's motion for summary judgment and vacated the arbitration award. It is well established that the district court has a limited function when called upon to review an arbitration award.[6] The Supreme Court has emphasized that

the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his. *United ed Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

*See also Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 294–95 (7th Cir. 1975); *International Association for Machinists, District No. 8, AFL–CIO v. Campbell Soup Company*, 406 F.2d 1223, 1226–27 (7th Cir. 1969); *Yellow Cab Company v. Democratic Organizing Committee, Local 777, S.I.A.N.U., AFL–CIO*, 398 F.2d 735, 737–38 (7th Cir. 1968).

Essentially, the district court set aside the arbitration award in this case because the arbitrator initially found that there was a "technical" violation of Rule 10 in that, with respect to each grievant, there was a three-day period during which he did not call in.[7] As the district court noted, Article X of the collective bargaining agreement states that the violation of "any rule" is just cause for discharge. The district court concluded that the Company could discharge employees for any violation of Rule 10 because the violation of "any rule" was just cause for discharge. The district court also stated that the arbitrator was without power to reduce the discharge penalty. We do not find this analysis by the district court compelling in the face of the heavy presumption supporting the arbitration award.

■ The issue presented for arbitration was whether Woolworth had "just cause" for discharging Fell, Kendricks and Turner. The arbitrator concluded that Woolworth did not have "just cause" even though Rule 10 had technically been violated and Article X provided that the violation of "any rule"

---

5. On appeal Woolworth does not argue that the employees do not meet the requirements of Rule 24 but rather Woolworth contends that an *unsuccessful* applicant for intervention cannot bring an appeal on the merits. We do not reach this point because we conclude that Fell, Kendricks and Turner should have been allowed to intervene.

6. *See United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

7. The arbitrator found that, in effect, Rule 10 had been modified from an "every day" rule to a "three day" rule. The arbitrator said:

While it is true that the Rule itself does not set out the three-day limitation which the Company imposes nor does it provide for an absolute discharge, the Company has as a matter of practice maintained that a person who fails to report for three days is subject to discharge and has apparently discharged a number of people. While the Rule is admittedly harsh, it is not unreasonable but it must be applied in consideration of all the facts in given instances and keeping in view the purpose of the requirement for individuals to call in when absent.

constituted just cause. Apparently, the arbitrator refused to read Article X literally.[8] Thus the question presented by this appeal is whether the district court properly rejected the arbitrator's reasons for this interpretation of the contract.

Two interrelated reasons for the arbitrator's interpretation of the contract appear from the record. First, the contract provisions relating to discharge are ambiguous. Woolworth's rules, which appear in the appendix which follows this opinion, are divided into three sections with the following headings:

(1) RULES PERTAINING TO SAFETY, FIRE PREVENTION AND SANITATION (Rules 1–7),

(2) RULES PERTAINING TO ATTENDANCE (Rules 8–10) and

(3) CAUSES FOR DISCHARGE PERTAINING TO WORK (Rules 11–22).

Rule 19 specifically provides that violation of the first seven rules, which relate to safety, fire prevention and sanitation would be cause for discharge, so the "RULES PERTAINING TO ATTENDANCE" (including Rule 10) are the only rules which do not appear, on the face of things, to be cause for discharge. Rule 10 itself states that *excessive absenteeism* would be cause for discharge, but does not specify a penalty for failing to notify Woolworth of an absence. Thus there is some question whether violation of "any rule" would, as Article X states, be cause for discharge, or whether only the violation of Rules 1–7 and 11–22 (and "excessive absenteeism") would be cause for discharge, as the rules themselves appear to provide. This ambiguity appears from the face of these provisions and demands interpretation.

Second, there were several reasons for interpreting the contract in a way which resolved the ambiguity against Woolworth. The arbitrator noted that in the instant case, each grievant had notified Woolworth of his initial absence and there was some confusion as to when each one was to return to work. The arbitrator examined the body of industrial law and concluded that when an employer is aware of an employee's initial absence, "it must be assumed that the employee has not abandoned his job and therefore the Company is bound to investigate the matter more fully and to be more lenient in its application of a strict rule such as the one involved herein." These considerations led the arbitrator to conclude that in light of the nature of the employees' violation of Rule 10, Woolworth did not have just cause to discharge them.

The district court rejected the arbitrator's interpretation of these somewhat contradictory provisions because it felt the arbitrator should have read Article X literally. However, this court has stated that review of an arbitration award is limited to two narrow questions: (1) whether the award "draws its essence from the collective bargaining agreement" and (2) whether "the arbitrator's words manifest an infidelity to this obligation." *Amoco Oil Company v. Oil, Chemical and Atomic Workers International Union, Local 7–1, Inc.*, 548 F.2d 1288, 1293–94 (7th Cir. 1977), *cert. denied*, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389. In applying this standard we noted that

> [a]n arbitrator's award does 'draw its essence from the collective bargaining agreement' so long as the interpretation can in some rational manner be derived from the agreement, 'viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.' [Citations omitted]. Neither the correctness of the arbitrator's conclusion nor the propriety of his reasoning is relevant to a reviewing court, so long as his award *complies with* the aforementioned standards to be applied by the reviewing court in exercising its limited function. *Id.* at 1294.

---

**8.** We question whether on its face such a sweepingly broad statement of principle could rationally be read with entire literalness.

We conclude that the arbitration award in the instant case "drew its essence" from the parties' agreement, viewed in the light of its language, the surrounding circumstances and the "law of the shop." The provisions at issue were somewhat contradictory so it was appropriate for the arbitrator to interpret them and resolve the ambiguity. His interpretation was rational so it should not have been rejected by the district court.

■ We also agree with the arbitrator's position that the reduction of the penalty from discharge to suspension did not modify an established practice. Rather it was another way of stating the arbitrator's apparent conclusion that no consistent and binding practice of discharging employees pursuant to Rule 10 in circumstances of the kind present in the instant case existed. The arbitrator had the power to reduce the discharges to suspensions because, if he found that Woolworth did not have just cause for the discharges, he was required to "order a remedy."

We therefore conclude that the district court erred in granting summary judgment for Woolworth and in vacating the arbitration award. That the district court, or this court, could easily reach conclusions different from those of the arbitrator as to the meaning of Rule 10, as to the proper interpretation of Article X or as to a substitute remedy is not germane. Woolworth and the Union did not agree upon either the district court or us as the final arbiter of their disputes. But they both agreed upon the arbitrator to have the last word. His decision is not irrational and must stand.

Reversed.

## APPENDIX

### F.W. WOOLWORTH CO.

### CHICAGO DISTRIBUTION CENTER

#### RULES PERTAINING TO SAFETY, FIRE PREVENTION AND SANITATION

1. All safety rules, regulations, and instructions must be observed and obeyed.

2. All accidents shall be reported immediately.

3. Any employee having knowledge of, or being witness to, an accident shall—if requested—give full and truthful testimony as to same.

4. All fire prevention and sanitary rules, regulations, and instructions must be observed and obeyed.

5. No smoking, except in washrooms during the period specified, nor creating of other fire hazards in the premises.

6. All refuse and waste to be placed in containers provided for the purpose.

7. All work places, aisles, passageways, rest rooms and lavatories to be kept in clean and sanitary condition.

#### RULES PERTAINING TO ATTENDANCE

8. All employees must be in their assigned places and ready for work at the designated starting time.

9. All employees shall remain at their respective places of work during working hours and shall not visit other parts of the premises except in the line of duty.

10. When an employee is absent from work, he shall notify the Company at the earliest possible time, giving reason for such absence, and keep Company advised daily as to the probable date of return to work. Excessive absenteeism is cause for discharge.

#### CAUSES OF DISCHARGE PERTAINING TO WORK

11. Inability or unwillingness to perform work as required or directed.

12. Neglect of duty, including neglect, misuse and wastage of Company material, property, tools or equipment, or wilful damage to or failure to properly safeguard and protect Company property.

13. Reporting for duty under the influence of liquor, or carrying into the plant or consuming intoxicating liquors on Company premises.

14. Disorderly conduct, or participation in fights or brawls on Company property.

15. Dishonesty or theft, including deliberate destruction, damage or removal of Company, or other employee's property.

16. The use and inclusion in or on any carton, case, package, or marking, symbol, sign or design of whatever description or form, not authorized by the Company.

17. Giving false information as to previous record and experience, or otherwise falsifying personal record or application statements.

18. Marking, defacing, damaging, writing or drawing, on or upon any walls, doors, or windows of Company property or facilities.

19. Disregard of, or inattention to, working directions and instructions, or refusal to comply with, or violation of, safety or fire regulations or sanitary rules and regulations.

20. The regular packages or boxes of merchandise shall not be opened, nor any of the contents removed therefrom, except by foreman or by employees directly authorized or instructed by foreman or the Management to do so, and then only in line with the work assigned to them. Packages or boxes of merchandise shall not be removed from their regular place, or sections, to other parts of the premises by any employee, for any purpose except in the regular performance of their duties, unless directly authorized or instructed to do so by foreman or the Management, and then only in line with the work assigned to them.

21. Falsification, or wilful destruction, of work records, or for not processing orders as scheduled or directed.

22. Reporting for duty under the influence, or carrying into the plant, or consuming or using on Company premises, or inducing or causing others to use any drugs, narcotics, stimulants, depressants or hallucinogens (unless prescribed by the employee's physician and taken only in accordance with the physician's prescription and instruction); or giving, selling or delivering such items to any other person on Company premises; or trafficking for the sale or delivery of such items while on Company premises. This rule refers but is not limited to amphetamines ("speed" "Pep pills"), barbituates [*sic*] ("Goof Balls"), tranquilizers, LSD-type drugs, and marijuana, grass or pot in any form.

BAUER, Circuit Judge, dissenting. I dissent.

The majority opinion seems to me to be doing precisely what the arbitrator did that was wrong: it rewrites the collective bargaining agreement.

To begin with, the question of standing is resolved by this Court in saying that "an approach which denies these employees their ultimate day in court subverts justice in the name of meaningless abstractions disguised as substantive labor law." This too is a "meaningless abstraction."

The fact is, "these employees" joined a union which had as one of its by-laws the following:

(B) Every member by virtue of his membership in this Local Union authorizes this Local Union to act as his exclusive bargaining representative with full and exclusive power to execute agreements with his employer *governing terms and conditions of employment and to act for him and have final authority in presenting, processing and adjusting any grievance, difficulty or dispute arising under any collective bargaining agreement or out of his employment with such employer, in such manner as the Local Union or its officers deem to be in the best interests of the Local Union.* The Local Union and its officers, business representatives and agents may decline to process any such grievance, complaint, difficulty or dispute, if in their sole discretion and judgment, such grievance, complaint or dispute lacks merit. (Emphasis added.) [1]

---

1. Excerpt from By-law of Miscellaneous Warehousemen's Union, Local No. 781, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America annexed

When the Union entered into the collective bargaining agreement with the company, it negotiated the terms of employment and the "just cause for firing" agreement. By terms of this contract, binding on the Union and the company, a violation of any company rule was *per se* a just cause for discharge. The contract called for arbitration of "any dispute with respect to the justification for a discharge."

With this in mind, it is obvious that the sole question before the arbitrator was whether "just cause" existed for the action of the company in firing the appealing employees. The arbitrator did just that: he reached the conclusion that there had been a violation of the company rules.[2]

Having made this finding, the purpose and scope of the hearing was over. The violation had occurred, the collective bargaining agreement by its terms had set forth a violation as just cause for discharge and the case was over.

Nevertheless, the arbitration award went further: it rewrote the employment contract. The arbitrator decided, as nearly as one can tell, that *he* would not have been that harsh, that he would not have exercised his right to discharge these three employees but would have fashioned a lesser penalty. And so he did.

The trouble, of course, is that he was not a party to the employment contract and he was not the party to fashion the penalty for the infraction of the company rules that he himself had found existed. That decision, that problem, was uniquely the right and burden of the company. It could, and did, insist on firing the employees. This decision was *not* the subject of arbitration; the right to make the decision *was* the subject of arbitration and that issue was resolved in favor of the company.

When the trial judge ruled that arbitrators are not free to rewrite conditions of employment or causes for discharge in labor contracts, and still less are they free to

fashion their own ideas of reasonable punishment in place of contractual rights to impose particular sanctions, the court was not engaged in "a seemingly sanctimonious concern for the niceties of collective bargaining." The court was, in my opinion, engaged in an intelligent application of contract and labor law.

It is fascinating to note that the Union, who acted on behalf of the complaining employees, secured them their day in court and found no quarrel with the decision of the district court. It might be that the Union, like the company, might consider that observing the "niceties of collective bargaining" is precisely what unions bargain for, insist upon and ultimately rely upon to protect the covered employee. The fact that such an approach also gives the company certain rights merely means that any contract is a two-way street—both parties have contractual rights.

Just as the arbitrator had no authority to rewrite the contract, we also lack such authority. That fact was recognized by the district court. I would affirm.

to Affidavit of Robert F. Sharp, Esq., dated July 9, 1979.

2. The finding was that the employees were guilty of a "technical violation" of the rules. Boiled down, that is a violation of the rules. It

is somewhat similar to a medical diagnosis of being "technically pregnant"—it means that the patient had better prepare for labor pains, or perhaps "technical labor pains."